## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KELLON LEWIS, Individually and on
behalf of all others similarly situated,

     Plaintiff,

                                Case No:
  v.                         COLLECTIVE ACTION

UMA EDUCATION INC., d/b/a
ULTIMATE MEDICAL ACADEMY,

     Defendant.

_____.

### FLSA SECTION 216B COLLECTIVE ACTION COMPLAINT

Plaintiff KELLON LEWIS, individually, and on behalf of all others similarly

situated who consent to their inclusion in a collective action, sues Defendant, UMA

EDUCATION INC. d/b/a Ultimate Medical Academy for violations of 29 U.S.C.

201 et seq. of the Fair Labor Standards Act (the "FLSA"), and states as follows:

### INTRODUCTION

1.     Defendant has willfully FAILED to pay overtime wages to all its group

of Inside Sales Representatives (ISR) working under various job titles, some self-

created, others created by the company such as:  Business Development

Representative (BDR), Career Services Advisor and other interchangeable or related

job titles, all of which are now or were at one time, used to identify employees

working as non-exempt, Inside Sales Representatives.  All members of the putative

class were classified as non-exempt status with based compensation plan of some stated annualized base pay, plus a bonus plan based upon achieving some sale.

2.      Defendant also by contractual arrangement provides these sales services to numerous other not for profit institutions (colleges?), including the following 8 other institutions:  a) University of Arizona Global Campus, b) Bellevue University, c) Eastern International College, d) Excelsior University, e) FAMU, f) Purdue University Global, g) South New Hampshire University, and h) Western Governors University.

3.      Defendants operated its business as a single integrated business enterprise from its corporate and main office in Tampa, Florida.

4.      Upon information and belief, Defendant employs ISR working remotely in and from geographic regions across the U.S.

5.      Defendants have maintained a common scheme to avoid paying overtime wages to its ISR nationally, and thus create more profits for itself to the determent of wages owed to 2000 or more employees.

6.      Defendant also maintained a De Facto policy discouraging employees against reporting more than 40 hours of work per week.

7.      Plaintiffs herein commences this Section 216b FLSA collective action lawsuit against Defendant for willful violations of the federal wage and hour overtime pay laws and related regulations on behalf of all similarly situated current

and former employees of Defendant who worked anytime in the preceding three (3) years to the present.

8.     Defendants absolutely know that Inside Sales Representatives routinely worked overtime hours, as managers and supervisors witnessed the extra hours, encouraged, and even pressured Inside Sales Representatives to work as many hours as possible to hit quotas and meet goals and performance metrics called (KPI meaning key performance indicators).

9.     Moreover, Defendants never asked employees to leave after the shift ended, never prohibited them from working prior to the shift time, and witnessed and knew that employees, including Plaintiffs, routinely worked through some or all of the (1) one hour provided meal break as to which Defendants took an automatic one (1) hour deduction from the total work hours each day, regardless of whether Inside Sales Representatives took such uninterrupted meal breaks or simply worked throughout some or all of the times deducted and without any means to report or claim this time.

10.    Defendants have turned a "blind eye" to all of the off the clock work for numerous reasons including reduced labor costs and increased profits, while pressuring, coercing, intimidating and encouraging Inside Sales Representatives to work as many hours as necessary to hit their quotas, metrics and production goals.

11.    Defendant has willfully failed to pay Plaintiff, and all similarly situated persons in accordance with the Fair Labor Standards Act (FLSA).  Specifically, Plaintiffs, and similarly situated employees were not paid premiums for all hours they worked in excess of forty (40) hours per week.

12.    Plaintiffs, and the class of similarly situated employees, did not and currently do not perform work that meets the definition of any exemption under the FLSA, and the Defendants' pay practices are not only clearly unlawful, but UNFAIR as well.

13.    In this pleading, the term "Inside Sales Representative" means any employee of Defendants working under the various titles of:  "Account Executive", "Account Manager", Business Development Representative" (BDR), "Closer", "Associate Sales Partner", "Sales Partner", "Specialist", Business Development Consultant", National Account Manager, Regional Account Executive, Fleet Manager, Senior Business Developer, Business Developer, Business Coordinator, Specialist Solutions Consultant, Inside Sales Representative or any other title or position, where employees perform substantially the same work as an ISR (discovery may reveal additional job titles and employees that should be included).  Inside Sales Representatives (ISR) in this class handle inbound and/or make outbound phone calls (cold calls), research the internet and either make internet presentations or demonstrations or schedule this for others such as Closers to finalize and

consummate the sales or complete the full cycle sales process and execute orders for sales and consummate the sale.

14.     In this pleading, "Defendants" means the named Defendants and any other subsidiary or affiliated and wholly owned corporation, organization or entity responsible for the employment practices complained of herein (discovery may reveal additional defendants that should be included).

15.     The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion.  Plaintiff reserves all rights to plead in the alternative.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action involves a federal question under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

17.     This Court is empowered to issue a declaratory judgment under 28 U.S.C.§§ 2201 and 2202.

18.     This Court has general jurisdiction over Defendants for the claims of all those similarly situated from across the U.S. and for non-resident opt in Plaintiffs because the Defendant's corporate office is here within this district.

19.     Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b) because the damages occurred within this district.

20.     Defendants' principal place of business is located within this district in Tampa, Florida and is subject to this Court's jurisdiction.

21.     Defendant is subject to the FLSA as a covered employer under enterprise coverage as Defendant engages in interstate commerce and the sales of commerce, including by soliciting employers interstate and seeking to get its former students and graduates employed across the U.S.

22.     Upon information and belief, Defendant has revenues during the past 3 years in the sum of $500,000 annually.

23.     Alternatively, Plaintiff is a covered employee who engages in interstate commerce by soliciting businesses across state lines, and likewise promotes and seeks to get its products (its graduates) hired across state lines and facilities the same.

## THE PARTIES

24.     Plaintiff Kellon Lewis is a citizen of Florida.  He worked for Defendant as an inside sales representative under the title of Career Services Advisor during the period of December 2022 until April 21, 2023.  Plaintiff Lewis worked remotely from his home, was hired from and reported to the Tampa, FL office.

25.     Plaintiff's primary job duty as a CSA was to solicit from a list of leads provided by Defendant, businesses who hire their graduates and those of its partner schools, primarily in the medical field.  Plaintiff does not receive a requisition for

candidates, and he is primarily making cold-calls and soliciting and not working with the business to interview candidates for Defendant or screen applicants.

26.     Plaintiff was provided leads and made outbound and inbound calls and sent out emails to solicit these businesses to interview and potentially hire Defendant's graduates or the graduates of its partner schools.  If a business hired a UMA graduate, Plaintiff was promised by an increase in his base hourly rate of pay of $1.00 per each person reportedly hired.

27.     All ISR also did not have the discretion and judgment to unilaterally select the best candidates, nor did the same matter to UMA.  Likewise, Plaintiff and all other ISR did not create their own marketing plans for the Defendant or for their sales solicitations.

28.     Plaintiffs' job duties were highly scrutinized, micromanaged and routine and standardized.

29.     All ISR had to submit by electronically transmitted means, weekly time sheets and were prohibited from submitting more than forty (40) hours per week and discouraged from claiming overtime wages.

30.     Moreover, Defendant's timekeeping and meal break policy precludes an ISR from being able to report the exact break times and claim those times when he or she worked during some or all of this 1-hour auto deduction.

31.    At all times material, Plaintiff was an employee of Defendant during the term of his employment as contemplated by 29 U.S.C. § 203.

32.    Defendant classified Plaintiff and all others similarly situated as non-exempt, hourly paid employees who were subject to the FLSA, including entitlement to overtime premiums for all hours worked more than 40 in each and every workweek.

33.     Plaintiff was paid a base hourly rate of pay and upon information and belief, all the ISR were hourly paid, non-exempt employees.

**DEFENDANT, UMA EDUCATION INC.**

34.    Defendant, UMA EDUCATION INC. (hereinafter "Defendant" and/or "UMA"), is a Foreign Not for Profit Corporation, with a principal place of business located at 3101 W. DR. MARTIN LUTHER KING JR. BLVD. TAMPA, FL 33607.  Defendant may be served through its Registered Agent for service of process, Cogency Global Inc., at 115 N. Calhoun Street, Tallahassee, FL 32301.

35.    As stated by Defendant on its website "Ultimate Medical Academy is a nonprofit healthcare educational institution with a national presence. For over 29 years, we've offered allied healthcare education, and now we offer content-rich, interactive online courses to approximately 10,000 students as well as campus-based training to hundreds of students. With more than 80,000 alumni, we are

institutionally accredited by the Accrediting Bureau of Health Education Schools (abhes.org).”

36.    Defendant further declares and touts: “We are proud to offer allied healthcare staffing solutions — in the form of skilled UMA healthcare grads — to our employer partners across the country.”

37.    In 2015, Clinical and Patient Educators Association (CPEA), a 501(c)(3) nonprofit organization, formed UMA Education, Inc. and acquired Ultimate Medical Academy (UMA).

38.    Defendant has now, or has in the past 3 years, employed ISR working remotely from _____ state in the U.S.   Upon information and belief, Defendant also now or in the past 3 years, employed similarly situated ISR in other geographic locations working remotely.

## GENERAL FACTUAL AND COLLECTIVE ACTION ALLEGATIONS

39.    This collective action arises from a longstanding and continuing wrongful scheme by Defendant to: a) willfully fail to accurately and properly track and record the work hours of ISR, and b) willfully refuse to pay overtime wages to a large class of Inside Sales Representatives who Defendant knows or should have known, were working off the clock and working overtime hours without being paid for all such hours.

40.     Plaintiffs brings this suit individually, and on behalf of all similarly situated persons composed of the following FLSA CLASS members:

**THE FLSA CLASS:**

> **All employees working as Inside Sales Representatives under the titles of: Career Services Advisor, Career Advisor, Business Development Representative, Business Development Associate, Account Executive, Alumni Career Specialist, Career Specialist, Admissions Coordinator, Admissions Advisor, Corporate Alliance Rep, Admission Counselor, Account Manager, Recruiter, Consultant, or any other job titles used to describe non-exempt, inside sales positions, who are currently employed by or were previously employed anywhere in the U.S. with UMA EDUCATION INC. or its subsidiaries or affiliated companies within the past three years preceding the filing of this lawsuit to the present.**

41.     Plaintiff is able to protect and represent the Collective or putative Class, is willing, able, and consents to doing so.

42.     Plaintiff has routinely worked more than forty (40) hours in workweeks throughout the term of their employment with Defendants and without being paid a premium for all these overtime hours.

43.     Plaintiff worked remotely from his home and reported directly to Defendant' Tampa, corporate office.

44.     Defendant required Business Development Representatives, CRA and ISR to work Monday through Friday, nine (9) hours per days, forty-five (45) hours per work week at a minimum in a set schedule of 8 am until 5 pm., or a later shift.

45.     Each day, the company had a standardized one (1) hour lunch break where all ISR are expected and required to use this set one (1) hour time for a meal breaks or just for break time, without deviation.    Those working the later shift had a later meal break time.

46.     Thus for each nine (9) hour work day scheduled and assigned by Defendants, the company automatically deducts one (1) hour of pay for each day for this break and informs ISR to claim and report ONLY eight (8) hours in total if they worked the full shift of nine (9) hours, regardless of whether Plaintiff or any other ISR took 5 minutes of uninterrupted meal break, 10 minutes, or no uninterrupted break at all.

47.     There is no real mechanism or policy in place for ISR to report and claim the time ISR perform work during the 1-hour meal break time, but they are all permitted to access systems, emails, phones during so-called meal breaks.

48.     If any ISR was still working during the meal breaks, Defendant would automatically clock them out after a few minutes so that they are subjected to the 1-hour meal break deduction from their 9-hour workdays, and regardless of whether Plaintiff of those similarly situated were still performing work at that time and thereafter.

49.     Plaintiff alleges for himself, and on behalf of the putative class who elect to opt-in to this action, that they are entitled to unpaid wages from Defendant

for overtime work for which they did not receive overtime premium pay as required by the FLSA, including for all meal break times they performed work during and which they did not have or take bona fide meal breaks, started work before the shift times or performed work after the ending shift time or outside the regular business hours.

50.     Defendant employs, upon information and belief and investigation, an estimated 500 or more Inside Sales Representatives working remotely from states across the U.S. including Georgia… etc.  Upon information and belief, Defendant with turnover, there are approximately 2500 or more persons who were employed as ISR during the preceding 3 years whose rights are affected by this action.

51.     Upon information and belief, the Inside Sales Representatives in all offices or remotely working under the various titles, are all paid under a common compensation plan of a base hourly rate of pay and some incentive compensation tied to their production or sales attentivities.

52.     All CSA, Admissions Advisors and all other Inside Sales Representatives under the various job titles also perform their job duties in a uniform, similar manner; and all are supervised and managed according to the same national standards and uniform policies and procedures set by the Defendant and applicable to all offices.

53.     All Inside Sales Representatives within this putative class here were treated and classified by Defendant as nonexempt employees, and whose primary duty is making sales or developing business leads for others to sell.

54.     Inside Sales Representatives were purposefully misled by Defendant to believe it was, and is, lawful to take one (1) hour off of the forty-five (45) hour work schedule for a mandatory meal break deduction without regard or concern as to whether the employees ever took the full one-hour break or worked through the allotted one (1) hour meal breaks.

55.     Said differently, Defendant failed to provide any mechanism and real opportunity for Plaintiff and all other Inside Sales Representatives to claim the times they worked through or during the one (1) hour meal breaks or to log in and out for breaks.

56.     Moreover, Inside Sales Representatives were informed subsequent to their acceptance of the offer to work for the Defendant, that they should do whatever is necessary to hit goals and performance metrics and maximize inventive pay, including working off the clock.

57.     The Defendant maintained a companywide policy throughout the relevant three (3) year class period of willfully refusing to pay overtime wages for all overtime hours worked for Inside Sales Representatives despite clear knowledge

Inside Sales Representatives have worked and continue to work overtime hours which are unreported and off the clock.

58.    Defendant used micro-management, and highly pressurized boiler-room tactics to discourage ISR from reporting or claiming overtime hours and to thus work off the clock.

59.    Plaintiff was specifically told by a supervisor, since he was contacting businesses in California and on Pacific time zone, that working extra hours in the evening and off the clock was in his best interest, and to worry more about getting his incentive bonus ($1) per graduate hired, rather than unpaid overtime hours.

60.    As per the company pay stubs and electronically submitted timesheets, it's generally and almost always just going to say forty (40) hours worked each week and eighty (80) hours for the two (2) week period.

61.    Upon information and belief, all Inside Sales Representatives are supervised by Supervisors called team leads or directors as well as other managers, who very closely on a daily basis, monitor performance, scrutinize sales representatives and their performance metrics, such as phone calls and production, and report results to the corporate office under a structured, corporate controlled manner; defendant micro-managed the Inside Sales Representatives on a daily basis.

62.    Failure to meet performance metrics and make sales results in disciplinary action, up to and including termination of employment; turnover of sales employees is believed to be 100% over a 2-year period of time.

63.    All Inside Sales Representatives handling outbound calls, primarily those with titles of CSA are expected to make a certain number of daily phone calls, and to send out upwards of an equally amount of soliciting emails.

64.    ISR were also required to have a set number of appointments each month and 2 placements per month.

65.    Defendant also created and maintained a De Facto policy that ISR should not report more than 40 hours, or overtime hours, on the time sheets unless pre-authorized, but all ISR should work as many overtime hours as needed or required, off the clock and "on their own dime," to meet quotas, performance metrics and sales goals and thus keep their jobs.

66.    The overtime wage provisions set forth in FLSA §207 apply to Defendant, as it engages in interstate commerce.  Indeed, at all relevant times, Defendant engaged in interstate commerce and/or in the production of goods or services for commerce within the meaning of FLSA Sec. 203.

67.    The actual job duties performed by the proposed putative class of Inside Sales Representatives do not satisfy the elements of any exemptions within

FLSA §213, as all perform routine jobs whose primary job duty was production and making sales, such as the placement or hiring of one it its graduates.

68.    Plaintiff, as well as the members of the putative class of similarly situated persons routinely worked during some or all of their lunch breaks, worked prior to or after the set and standardized nine (9) hour daily shift times, including sending or receiving and reading emails without being paid for all these additional work hours.

69.    Plaintiff routinely engaged in making or receiving telephone calls, reading or sending emails after business hours, as to which Defendant did not provide any guidance or opportunity to submit or claim these additional work hours.

70.    Many sales calls and demonstrations had to take place in the evening hours lasting after the ending shift time to accommodate business owners and their officers so as not to disrupt their business during standard daily working hours.

71.    Plaintiff routinely commenced working prior to and after the scheduled shift times of 8:00 am until 5:00 pm and was not precluded from the same.

72.    Plaintiff, and all other similarly situated employees are currently or have previously been covered under FLSA §207.

73.    Pursuant to FLSA §207, Defendant, as the employer of Plaintiff and other similarly situated ISR, was and is required to pay one and one-half times each employee's hourly rate for hours worked in excess of forty (40) hours per week.

74.     Defendant is fully aware that employees who work during lunches, come in early and stay late, as management can clearly see them doing so and encouraged employees to do so and take advantage of the additional time to meet production goals and quotes.

75.     Defendant was also fully aware that the nature of the position required and involved ISR making and receiving telephone calls and sending and receiving emails in the evening hours, and further by their accessing the CRM programs and telephone dialer and email accounts.

76.     Defendant required a mandatory number of phone calls or dials per day, even 300, 3 hours of talk times and 5 appointments set, all of which produced a very stressful, boiler room type environment and which combined with the threats of discipline and termination of employment for not meeting production goals and requirements, fostered the off the clock work by ISR.

77.     Upon information and belief, all of the top performing Inside Sales Representatives routinely worked overtime and extra hours and there is a known direct correlation between the number of hours worked and the production and productivity of the sales employees.

78.     Defendant however, maintained a De Facto policy against ISR reporting overtime hours, or complaining about not being paid for all overtime hours

worked each day and each week under fear and threat of scrutiny being brought upon them for incurring overtime hours.

79.     Defendant suggested to ISR that all overtime had to be "preapproved" by several levels of management, and thus, to many it was futile to even ask if they were not already meeting and exceeding goals and quotas.   Defendants' policy was circular, and the proverbial chicken and egg type game of do not claim or seek to claim overtime without approval and without having met or exceeded goals and quotas.

80.     Thus, even when Plaintiff did have an opportunity to claim and report overtime hours, from fear of reprisal, he limited the hours reported, even though he worked through breaks, coming in early, doing work outside the office.

81.     The Company maintained a code of silence when it came to the issue of overtime hours and overtime wages, with literally no meetings or discussions about the time tracking requirements of the FLSA, or how to submit and claim overtime hours worked both inside and outside the office, including the 1-hour meal breaks.

82.     Defendant maintained a culture and environment of discouraging and intimidating BDR from submitting, or reporting overtime hours worked because if they were not the top producers or meeting all quotas and goals and performance

metrics, they would be subjected to a high level of scrutiny and face the ire of management.

83.    All Inside Sales Representatives worked a similar schedule of five (5) days per week, typically from about 8:30 a.m. until 5:30 p.m., or one later starting shift.  All shifts are nine (9) hour days with one hour allotted for lunch.

84.    Defendant has strongly encouraged and pressured Inside Sales Representatives to work overtime hours from home or to come in early or stay late.

85.    In order to meet sales quotas and maximize their commission (or interchangeably, "bonus" or "increase in pay"), Plaintiff and other Inside Sales Representatives would routinely work as many overtime hours as they wished with the full knowledge, approval and encouragement of sales supervisors, meaning management.

86.    Inside Sales Representatives were warned when falling short of quotas and metrics that their jobs could be terminated and encouraged to work as many hours as necessary and possible to hit goals and quotas; thus, overtime hours increased towards the end of the month by many ISR.

87.    All Inside Sales Representatives followed corporate policies and procedures applicable to theme whatever state the Inside Sales Representatives worked from on a nation-wide basis.

88.     All Inside Sales Representatives were trained to perform their job duties and expected to perform their job duties in similar manners throughout their multiple offices.

89.     All Inside Sales Representatives attended sales meetings during which the Defendant went over new procedures, policies and sales protocols and was clear to Plaintiff, applied to all Inside Sales Representatives employed by the Defendants.

90.     Defendant was aware that ISR were working off the clock, working more hours than reported or underreporting hours, including coming in early, working during allotted meal breaks and staying late.

## COUNT I
## VIOLATIONS OF FLSA §207 AND DECLARATORY ACTION PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202

91.     Plaintiff alleges and incorporates by reference the foregoing paragraphs of this Complaint and fully restates and realleges all facts and claims herein as if fully stated.

92.     Defendant has willfully and intentionally engaged in a common company pattern and practice of violating the provisions of the FLSA, by failing to pay all Inside Sales Representatives, under the various job titles identified in this complaint, required overtime wages for all hours worked.

93.     Plaintiffs, and all other BDR, CSA, BDR, Admissions Advisors, all others working under various titles used to describe Inside Sales Representatives

(ISR), routinely worked through some or all of the one (1) hour meal break provided, and as such all times should have been counted as compensable overtime hours during any workweek that Plaintiff and all others similarly situated worked the rest of the forty (40) hour shift times.

94.    Defendant knew that Plaintiff and ISRs routinely worked through some or all of this 1 hour provided lunch break and knew that working while eating was not an uninterrupted, excluded work time.

95.    Employees were not given any real opportunity to report and claim these compensable meal break hours (whether 15 minutes, 30 minutes or more for times spent working during the1 hour deducted meal break), or the times spent on telephone calls and emails outside the office, and the company time reporting system did not provide for any contemporaneous time tracking in which breaks were logged in and out or the actual start or ending times for the day were logged.

96.    Similarly, all ISR, including Plaintiff were permitted to commence working prior to the shift times, but likewise, there was no means to clock in when they started working until 5 minutes before the scheduled shift start time.

97.    Plaintiff and other ISR also routinely worked after the ending shift times and were discouraged by management or supervisors from claiming and reporting these overtime hours or working this time while on the clock.

98.    The circular premise was that all overtime had to be pre-approved, which was illusory, and not real, so that employees like Lewis would just be permitted with company knowledge, to work this time and suffer to work off the clock.

99.    Defendant also failed to provide any real means to report these additional times and work hours both for any times still working during the 1-hour meal breaks and times worked prior to the shift start time or worked after the ending shift times, and thus, all such time should have been counted as compensable, meaning payable, work time.

100.    Defendant had a duty and obligation under the FLSA, and as per CFR part 516, to contemporaneously track and record all work hours of hourly non-exempt employees, including BDR, CSA, AA, and ISR under any job titles.

101.    As Defendant failed to institute any actual time tracking system or time clock for employees to log in and out their ACTUAL work times, the system left Plaintiff, and all other ISR subject to working off the clock and routinely working overtime, compensable hours without being paid for all the hours worked.

102.    Defendant's conduct and actions of turning a blind eye, ignoring the fact that time sheets showing eight (8) hours every day, and forty (40) hours every week were clearly known to be inaccurate and an understatement of Plaintiff and all

other ISR actual working hours, resulted in a willful violation of the overtime wage law of Section 207 of the FLSA.

103.   Defendant's actions constitute permitting Plaintiff and all other ISR to suffer to work off the clock without being paid for all hours, as literally there was no actual time clock.

104.   Defendant maintained a code of silence as to discussing overtime hours, overtime pay and any problems of employees knowingly exceeding the forty (40) hour workweek by coming in early, working through meal breaks and staying late while their time sheets reflect only forty (40) hours for the week and eight (8) hours for the day.

105.   At any given time, managers and supervisors were aware of Plaintiff and other BDR, CSA, AA and ISR coming in and working early, working through meal breaks and staying late and that their time sheets were inaccurate and not capturing all their work hours.

106.   Indeed, ISR were intimidated against reporting the extra compensable overtime hours and told to focus on their performance goals and bonuses, while simultaneously being pressured and warned to hit goals, metrics and quotas or be subject to disciplinary action, including termination of their employment.

107.   The Defendant intentionally created a work environment and culture that was oppressive, laced with fear and intimidation against reporting overtime

hours and complaining about not being paid for all overtime hours, as doing so would draw the ire and scrutiny of management.

108.   Meanwhile, Plaintiff and all other ISR were warned to hit metrics and goals, or they would find themselves on the way out the door.

109.   Employees worked in fear of reporting the overtime hours worked, out of fears and concerns that if they were not meeting the quotas, metrics and goals, they would be subjected to review, scrutiny and potential termination.

110.   Thus, Plaintiff and other ISRs worked off the clock without complaints, despite management knowing that the top producers and performers did so, and UMA also knew that in order to be a top producer and performer, these jobs required employees to work more than 40 hours routinely and off the clock, including during meal breaks.

111.   Thus, Plaintiff and other ISR remained silent and worked overtime hours routinely without reporting these hours and without being paid for all the hours worked.

112.   Defendant has willfully and with reckless disregard for the requirements of the FLSA and its regulations, failed to pay Plaintiff and the Putative Class, comprised of all current and former similarly situated ISR a premium or overtime wages for all work hours over (40) hours in one or more work weeks as mandated by FLSA §207.

113.   Defendant does not have a good faith basis for these described unlawful pay practices, such that Plaintiff and each and every member of the putative class is entitled to be paid an equal sum in overtime wages owed at rates of one- and one-half times their respective regular rates of pay as liquidated damages. *See Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

114.   Defendant knowingly and willfully failed to track the hours worked by Plaintiff and the class of similarly situated employees.

115.   Defendant suggested, encouraged and requested that all ISRs work as many hours as they could to meet or exceed sales goals, and has direct knowledge of ISR working overtime hours.

116.   By failing to record, report, and/or preserve records of all minutes and hours worked by Plaintiffs and the class of similarly situated ISR, Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 et. seq., including 29 USC Sec. 211(c) and 215 (a).

117.   Defendant knew or should have known that the act of permitting ISR to work off the clock and without a clock, including working through meal breaks, coming in early, staying late was grossly insufficient and evades the wage and hour requirements of the FLSA such that a three (3) year statute of limitations applies.

118.    Defendant knew or should have known that its time keeping practices of prepopulating 8 hours per day and 40 hours per week, and auto deducting 1 hour of breaks without the real means to report and claim times worked during these meal breaks was a grossly insufficient practice, discourages accurate reporting of overtime hours, and evades the wage and hour requirements of the FLSA such that a three (3) year statute of limitations applies.

119.    Defendant knew and have known by prior actions and complaints, that overtime wages are to be paid to all ISR for time they worked and which they, by and through supervisors or managers or other employees had reasons to know was occurring, but, as a means to save hundreds of millions of dollars in labor costs each year, willfully created policies and procedures to limit and avoid paying employees the overtime wages due and owing and discouraged the reporting of overtime hours.

120.    To summarize, Defendant has willfully and lacking in good faith, violated the FLSA by the following unlawful pay practices applicable to Plaintiff, and the class of similarly situated persons:  a) maintaining a De Facto policy against reporting all overtime hours worked, including working during meal breaks; b) taking 1 hour meal breaks from ISR when they knew or should have known ISR had not taken this full hour or performed work during this 1 hour auto deducted break time; and c) willfully permitting Plaintiffs and all other ISRs to suffer to work off

the clock without being paid for all hours worked, including but not limited to the inability to claim the times they worked during the 1 hour meal breaks..

121.   As a result of Defendant's willful violations of the FLSA, Plaintiff and the putative Class, composed of all other present and former ISR similarly situated, have suffered economic damages by Defendant's failure to pay overtime compensation in accordance with FLSA §207.

122.   Due to Defendant's willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations pursuant to 29 U.S.C. §255(a).

123.   As a result of Defendant's unlawful acts and pay practices described herein, Plaintiffs and the Putative Class of all other similarly situated ISRs, have been deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of such amounts, liquidated damages in amount equal to the overtime wages due, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §216(b), as well as injunctive relief pursuant to 29 U.S.C. §217.

**WHEREFORE,** Plaintiff Kellon Lewis, individually, and on behalf of all other similarly situated past and present Inside Sales Representatives (ISR), seek the following relief:

a.  Designate Plaintiff Lewis as Representatives of the FLSA Collective Class and award him a service fee or award for bringing this action on behalf of all others similarly situated.

b.  That the Court find and declare Defendant has willfully violated the overtime compensation provisions of the FLSA;

c.  That the Court find and declare Defendant's violations of the FLSA overtime laws were and are willful and lacking a good faith basis for complying with the state and federal overtime laws;

d.  That the Court enjoin Defendant, under 29 U.S.C. § 217, from withholding future payments of overtime compensation owed to members of the FLSA Class;

e.  That the Court award to Plaintiff Lewis, and the FLSA Class, comprised of all similarly situated employees, overtime compensation at the lawful and applicable overtime and premium rates of pay, including the value of all compensation earned for bonuses/commission, for previous hours worked in excess of forty (40) for any given week during the past three years AND liquidated damages of an equal amount of the overtime compensation, in addition to penalties and interest on said award pursuant to FLSA §216 and all other related economic losses;

f.  That the Court award Plaintiff and the plaintiffs who opt into this action, recovery of their reasonable attorneys' fees, costs and expenses of litigation pursuant to FLSA § 216;

g.  That the Court finds Defendant has willfully, and with a lack of good faith, violated the overtime provisions of the FLSA, including the time tracking requirements for non-exempt employees;

h.  That the Court apply a three (3) year statute of limitations to the FLSA claims;

i.  That the Court award any other legal and equitable relief as this Court may deem fair, just or appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Respectfully submitted August 18, 2023.

/s/Mitchell L. Feldman
**Mitchell L. Feldman, Esq**
Florida Bar No.: 0080349
FELDMAN LEGAL GROUP
6916 W. Linebaugh Ave #101
Tampa, Fl 33625
Tele: (813) 639-9366
Fax: (813) 639-9376
mfeldman@flandgatrialattorneys.com
*Lead Counsel/Lead Attorney for Plaintiff
and the class of  similarly situated*